JEAN H. REBILLARD, EXECUTOR (ESTATE OF JULES REBILLARD) *v.* BERNICE HAGEDORN ET AL.
(3538)

HULL, BORDEN and DALY, Js.

Argued December 10, 1985—decision released March 4, 1986

*Charles F. Brower,* with whom was *Elbert G. Manchester,* for the appellants (defendants).

*John W. Pickard,* for the appellee (plaintiff).

HULL, J. The defendants, the daughters of Jules Rebillard, the decedent, appeal from the judgment of the trial court finding for the plaintiff, their brother and the executor of the decedent's estate, in his action to compel reconveyance of certain real property to the estate. The trial court correctly determined that the property in question was held by one of the defendants in a resulting trust for the decedent. Accordingly, we find no error.

The trial court found the following facts. In March or April of 1982, the decedent was admitted to Hartford Hospital after suffering a stroke. While in the hospital, he executed a statutory short form power of attorney to the defendants, Bernice Hagedorn and Shirley Hurley, pursuant to General Statutes § 1-42 et seq. A short time later, the decedent was transferred to Geer Memorial Health Center, a long term treatment facility and convalescent hospital. Approximately one month after the decedent arrived at Geer, Hagedorn and Hurley conveyed certain real estate owned by the decedent to their sister, the defendant Doris Carlson, by quitclaim deed. The property was transferred to Carlson to facilitate mortgaging it if necessary to provide for the decedent's care, and, accordingly, no consideration was exchanged for the property. The decedent died six months later. There was no evidence that the property was ever mortgaged.

The plaintiff was appointed executor of the estate. In that capacity, he asked the defendant Carlson to reconvey the property. When she refused, the plaintiff brought this action against her and the other defendants to force them to return the property. The plaintiff sued in four counts claiming as follows: (1) that Hurley and Hagedorn fraudulently conveyed the property to defeat the rights of the decedent's creditors; (2) that Hurley and Hagedorn, by conveying the property, exceeded the scope of their authority under the power of attorney; (3) that Hurley and Hagedorn breached their fiduciary duties to the decedent by conveying the property; and (4) that the conveyance was made with the intent to establish a trust in favor of the decedent's beneficiaries and creditors. The plaintiff also alleged, in each count, that Carlson refused to reconvey the property in derogation of the rights of the decedent's beneficiaries and creditors.

The court found for the plaintiff on the fourth count, holding that, since the transfer was intended solely to benefit the decedent, a resulting trust had been created in his favor. Because the court found for the plaintiff on a resulting trust theory, it did not rule on the plaintiff's other claims[1] but rather rendered judgment for the plaintiff and ordered Carlson to reconvey the property to him as executor.

In this appeal, the defendants make one claim: that the court erred in deciding that a resulting trust was created by the conveyance of the property to Carlson. In support of this claim, the defendants make two arguments. First, they contend that pursuant to the power of attorney Hagedorn and Hurley had the authority to transfer title to the land to anyone they chose, with or without consideration. They claim that the court based its decision to impose a trust on a misapplication of this principle. The defendants also argue that the court's decision was based on a clearly erroneous determination of fact, namely, its finding that the property had not been mortgaged to pay for the decedent's care.

The defendants' first argument mischaracterizes the court's decision. The court did not conclude that the defendants lacked the authority to transfer absolute title to the property, but rather found that they lacked the intent to do so. "Intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which could not reasonably be drawn." (Citations omitted.) *Whitney* v. *Whitney*, 171 Conn. 23, 33, 368 A.2d 96 (1976). Here, the court's finding that Hagedorn and Hurley did not intend to vest legal and equitable title in Carlson is not

---

[1] While the court did not expressly dispose of the plaintiff's first count, it impliedly rejected that count by finding that the defendants, in conveying the property, acted with honesty and with a sincere desire to take care of their father.

only reasonable but almost inescapable. Carlson testified that the only purpose for the transfer was to provide for the care of the decedent. She also testified that she would have reconveyed the property to the decedent had he recovered from his illness. Additionally, Hurley testified that she had not intended to make a gift of the property to Carlson. Given this testimony, the court's conclusion that Hurley and Hagedorn[2] did not intend to convey absolute title to the property to Carlson was, beyond doubt, reasonable.

On the basis of this determination of the parties' intent, the court correctly found a resulting trust. Where one person has acquired obstensibly absolute title to property when he was not intended to, under circumstances which indicate that he should not be permitted to retain absolute title, equity may impose a resulting trust. 76 Am. Jur. 2d, Trusts § 196. Where, for example, the property is conveyed without consideration for a particular purpose and that purpose is either fulfilled or frustrated, a court may find a resulting trust. *Bassett* v. *Pallotti, Andretta & Co., Inc.,* 117 Conn. 58, 62, 166 A. 752 (1933). Similarly, where the purchase price for property is paid by one individual and title is taken in the name of another, the law may impose a resulting trust in favor of the person who paid the purchase price. *Farrah* v. *Farrah,* 187 Conn. 495, 500, 446 A.2d 1075 (1982); *Ward* v. *Ward,* 59 Conn. 188, 195, 22 A. 149 (1890). In these and similar circumstances, a resulting trust is imposed based on the par-

---

[2] While the property was owned by the decedent, it is the intent of Hagedorn and Hurley that is controlling. Pursuant to the power of attorney, the defendants became the decedent's agents and operated in his stead to the extent authorized by the power of attorney. *Long* v. *Schull,* 184 Conn. 252, 256, 439 A.2d 975 (1981). "The principal in such a relationship is 'bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment . . . .' 3 Am. Jur. 2d, Agency § 261." *Bank of Montreal* v. *Gallo,* 3 Conn. App. 268, 273, 487 A.2d 1101 (1985).

ties' presumed or actual intent that a trust relationship result from the transfer.

Here, the court found that the parties intended that the property be transferred for a limited purpose only: to provide for the decedent. None of the parties intended to vest absolute title in Carlson. As discussed previously, these findings are indisputably correct, and these findings justified the imposition of a resulting trust. Once the purpose for which the property was transferred, the care of the decedent, was either fulfilled or frustrated, the property in equity had to be reconveyed to the decedent's estate. *Bassett* v. *Pallotti, Andretta & Co., Inc.,* supra.

The defendants' second claim is that the trial court's finding that the property had not been mortgaged was clearly erroneous. They argue that the evidence that a mortgage had been taken on the property was clear and uncontroverted and, therefore, the trial court erred in making a contrary finding. According to the defendants, the trial court made its decision to impose a resulting trust on the basis of this erroneous finding.

It is unnecessary for this court to determine whether the trial court's conclusion about the mortgage was clearly erroneous, since its ultimate decision to find a resulting trust was correct. "Where the trial court reaches a correct decision on incorrect grounds, that decision will be sustained if correct grounds exist to support it. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 588, 418 A.2d 939 (1979); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978)." *Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180 Conn. 296, 301, 429 A.2d 883 (1980). Here, ample grounds existed to support the trial court's conclusion.

There is no error.

In this opinion the other judges concurred.